AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

**FILED**

JUL 0 7 2011

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT.
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ROBIN M. O'CONNOR | ) | Case No. 3 11-7077 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 2010 to July 2011 _____ in the county of _____ San Francisco _____ in the

_____ Northern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. section 1343 and 18 U.S.C. section 1030(a)(4) | wire fraud and fraud in connection with a computer |

This criminal complaint is based on these facts:

see Affidavit of Jason Richards, attached hereto and incorporated herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Jason Richards
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/07/2011 _____

_____
*Judge's signature*

City and state: _____ San Francisco, California _____

Maria-Elena James, U.S. Magistrate Judge
*Printed name and title*



## AFFIDAVIT OF SPECIAL AGENT JASON RICHARDS IN SUPPORT OF
## APPLICATIONS FOR ARREST, SEARCH AND SEIZURE WARRANTS
### A. INTRODUCTION

1.   I make this Affidavit in support of the following: (1) applications under Rule 41 of the
     Federal Rules of Criminal Procedure for search and seizure warrants as follows: (a) the
     residence of ROBIN M. O'CONNOR, located at 230 Cantada Way, American Canyon,
     California (Attachment A); (b) Wells Fargo Bank accounts #5967215491, #9814058427,
     and #6477214735 (Attachment C); and (2) an application under Rule 4 of the Federal
     Rules of Criminal Procedure for a warrant for the arrest of ROBIN M. O'CONNOR.

2.   Until yesterday, O'CONNOR was employed by the San Francisco Giants as a payroll
     manager. As described in more detail below, there is probable cause to believe that
     O'CONNOR embezzled more than $1.5 million from the Giants' payroll between
     approximately June 2010 and June 2011. Based on the information set forth below, there
     is probable cause to believe that O'CONNOR committed the following federal criminal
     offenses, among others: 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1030(a)(4) (fraud
     in connection with a computer).

3.   The statements contained in this affidavit are based upon my personal knowledge and/or
     on information provided by other law enforcement officers, agents, and personnel, as well
     as on my experience, background, and training. Specifically, on July 6, 2011, I spoke
     with employees of the San Francisco Giants, including the general counsel, the chief
     financial officer, and the vice president of finance. I also reviewed financial records
     obtained from the Giants' payroll system, as described below, O'CONNOR's personnel

-1-

file, and information obtained from Wells Fargo bank.

4.    Because this affidavit is submitted for the limited purpose listed above, I have not
      included each and every fact known to me concerning this investigation. I have set forth
      only those facts that I believe are necessary to establish probable cause. Where I have
      reported statements made by others or from documents that I have reviewed, those
      statements are reported in substance and in part, unless otherwise noted.

## B. AGENT BACKGROUND

5.    I am a Special Agent of the FBI and have been so employed since September 1998. I am
      currently assigned to the San Francisco Division and work on a White Collar Crime
      squad. As a federal agent, I am authorized to investigate violations of laws of the United
      States and I am a law enforcement officer with authority to execute warrants issued under
      the authority of the United States.

## C. PROBABLE CAUSE

6.    ROBIN M. O'CONNOR was hired by the San Francisco Baseball Associates LP, which
      owns the San Francisco Giants Baseball Club ("Giants"), as a payroll manager for the
      Giants. Her base salary was $80,000 annually and she was eligible for bonuses.
      According to her personnel file, she is a member of the American Payroll Association and
      has approximately 20 years experience as a payroll manager.

7.    As payroll manager, O'CONNOR processed payroll for Giants employees, including
      players. Her duties included making changes to the amounts and destinations of direct
      deposits to employees' bank accounts for salary and expenses. O'CONNOR used ADP
      Pro-Business software, licensed by the Giants, to process payroll. She accessed this

-2-

software using a laptop computer issued to her by the Giants. For at least the last year, she used this laptop in both her office and remotely from her residence.

8. O'CONNOR's current address, according to Giants' personnel records, is 230 Cantada Way, American Canyon, California. Someone matching the description of O'CONNOR was observed today by FBI agents departing this address.

9. On July 5, 2011, a Giants human resources manager ("HR manager") was contacted by a representative of Bank of America Home Loans ("BofA") regarding O'CONNOR. The BofA representative stated that O'CONNOR had applied for a residential loan for a property in the San Diego, California area. Included in the loan file was a letter of explanation on San Francisco Giants letterhead regarding two large deposits that had been made into O'CONNOR's bank account. The letter included a signature block and written signature of the HR manager. The letter stated in part:

To Whom It May Concern:

I am writing this letter on behalf of our employee Robin O'Connor. Robin is an employee in good standing with the San Francisco Giants Baseball Organization. Because of her outstanding contributions to our Major League Baseball team and Front Office during the 2010 season that assisted us in accomplishing our goal of winning the 2010 World Series, she was given two additional payments of compensation in May 2011. The two additional payment amounts were $100,090.71 and $200,348.89. These amounts were sent via direct deposit on May 13, 2011.

The letter further stated that any questions should be directed to the HR manager at a specific telephone number. This telephone number was not, in fact, the number for the HR manager but instead was O'CONNOR's desk number at the Giants' offices in San Francisco.

-3-

10. Bank of America sent a copy of the letter to the HR manager. The HR manager reviewed the letter and determined that the contents of the letter were false and that her signature had been forged.

11. The Giants financial staff reviewed the letter and investigated the two deposits identified. The financial staff, using its Pro-Business payroll software, identified deposits into O'CONNOR's Wells Fargo Bank Account #5967215491 that match the dollar amounts of the two deposits identified in the letter to BofA. The Giants' financial records show that the $200,348.89 deposit was redirected from a Giants' employee's direct deposit payment to O'CONNOR's Wells Fargo account on or about May 13, 2011. The Giants' financial records also show that the $100,090.71 deposit was a purported tax adjustment to a second Giants' employee's salary that was redirected on or about May 13, 2011, to O'CONNOR's Wells Fargo account.

12. Based in part on this information, on the morning of July 6, 2011, members of Giants' management confronted O'CONNOR at the Giants' offices. When confronted, O'CONNOR admitted that she was responsible for the unauthorized diversions of $200,348.89 and $100,090.71 from the two Giants employees, as well as two additional unauthorized diversions of $200,345.95 and $107,776.54 from one of the two employees. The total amount she admitted diverting without authorization was $608,562.09. O'CONNOR further admitted that she forged the June 27, 2011, letter sent to BofA. Based on this confession, the Giants terminated O'CONNOR's employment. O'CONNOR agreed to return the amount she confessed to having stolen and on the afternoon of July 6, 2011, accompanied a Giants' executive to Wells Fargo bank and

-4-

caused a wire transfer to be made from her account to the Giants in the amount of $608,562.09. I have reviewed a record of the wire transfer and it shows that the wired funds traveled in interstate commerce.

13. Following the meeting with O'CONNOR, the Giants' financial staff conducted a detailed review of the Pro-Business database to which O'CONNOR had access. Their review showed a total of eight suspicious deposits into a Wells Fargo account belonging to O'CONNOR (checking account #5967215491) and three suspicious deposits into another Wells Fargo account (savings account #9814058427), that had been improperly redirected from salary and expense payments that were supposed to have been made to a total of nine different Giants employees. The net amount that had been misdirected to O'CONNOR's accounts was $1,513,836.28, which includes the $608,562.09 that O'CONNOR admitted to misappropriating.

14. Among the payments that had been redirected without authorization include payments of $50,000, $75,000, and $125,000 that were supposed to have been direct deposited into the bank accounts of three different Giants' employees on or about June 10, 2011. Giants financial records show that each of these sums were deposited on that date into Wells Fargo saving account, #9814058427.

15. A representative of Wells Fargo bank informed me today that O'CONNOR has three Wells Fargo accounts over which she has signature authority.

   a. The first account is a checking account, account number 5967215491. This is a joint account held by Neil E. O'Connor and Robin O'Connor, both of whom have signature authority on the account. As of today, this account had a balance of

-5-

approximately $124,781.20. Based on information from the Pro-Business database provided to me by the Giants, between approximately August 31, 2010, and approximately May 10, 2011, approximately $1,198,073.39 of unauthorized deposits were diverted into this account, including an unauthorized deposit of approximately $286,427.77 on or about September 15, 2010.

b.    The second account is a savings account, account number 9814058427. As of today, this account had a balance of approximately $401,007.09. This is an account in the name of Sean P. O'Connor, a minor. The authorized signatories on this account are Neil E. O'Connor and Robin O'Connor. Based on information from the Pro-Business database provided to me by the Giants, on or about June 10, 2011, approximately $250,000 of unauthorized deposits were diverted into this account. Also between on or about September 2010 and today, this account received $145,000 from account number 5967215491.

c.    The third account is a savings account, account number 6477214735. This is a joint account held by Neil E. O'Connor and Robin O'Connor, both of whom have signature authority on the account. As of today, this account had a balance of approximately $41,565.89. In or about August 2010, the balance in this account was $0.01. On or before September 15, 2010, $2,000 was deposited into this account from account number 9814058427. On or about September 15, 2010, $75,000 was transferred into this account from account number 5967215491. Based on information from the Pro-Business database provided to me by the Giants, on or about September 15, 2010, an unauthorized deposit of

-6-

approximately $286,427.77 was made into account number 5967215491. From on or about September 15, 2010, to on or about July 6, 2011, the only funds deposited into account number 6477214735 came from account number 5967215491. As set forth above, on July 6, 2011, O'CONNOR wired $608,562.09 from account number 6477214735 to the Giants' payroll account, leaving the balance of approximately $41,565.89.

16.    On July 7, 2011, I spoke with O'CONNOR's immediate supervisor, the vice president of finance for the Giants. The supervisor informed me that O'CONNOR was issued a laptop computer by the Giants so that she is able to work from her residence. The laptop and the Giants' computer system is used for communications in interstate commerce. The laptop computer issued to O'CONNOR, which has been turned over to the FBI, was the device used by O'CONNOR perform her duties as a payroll manager and the device by which she accessed the Pro-Business database in order to manage the direct deposit payments of salaries and expense reimbursement for Giants' employees. The supervisor further informed me that over the last year, O'CONNOR has periodically worked from home on Giants business and, most recently, worked from home on Tuesday, July 5, 2011.

17.    The Giants authorized O'CONNOR to use the laptop computer that was provided to her for the purpose of processing authorized payments to Giants' employees, including their salaries and expense reimbursements. The Giants did not authorize O'CONNOR to use or access her business-issued laptop to redirect funds from other employees' salaries or expense reimbursement to her bank accounts.

-7-

18.    Documents I obtained from Wells Fargo show that on January 2011 a check in the amount of $25,000 from account number 5967215491 was issued to Ford Lincoln Fairfield. In April 2011, a check in the amount $36,458.35 was issued from account number 5967215491 to Wells Fargo Dealer Services, an automobile loan service. In April 2011, a check in the amount of $20,355.44 was issued from account number 5967215491 to Chase Auto Finance to pay off a BMW automobile. All checks were signed by O'CONNOR.

### D. ITEMS TO BE SEIZED FROM 230 CANTADA WAY

19.    A list of the specific items to be seized from O'CONNOR's residence at 230 Cantada Way, American Canyon, California, is attached to, and incorporated in, this affidavit as Attachment B. Based on my training and experience, and the facts set forth herein, I respectfully submit that there is probable cause to believe that the items listed in Attachment B will be found at the 230 Cantada Way, American Canyon, California.

20.    Based on my training and experience, I know that individuals who engage in criminal activity keep and maintain personal and business records for long periods of time. In this case, the personal and financial records that reflect the illegal activity in which O'CONNOR engaged, including bank account records, credit card records, records related to automobile purchases and home repairs, and other similar records are of the type that typically are maintained by individuals for tax and other reasons for periods of years.

### E. SEIZURE OF BANK ACCOUNTS

21.    As described above, there are funds contained in three Wells Fargo accounts that were

-8-

deposited in those accounts improperly and without authorization.

**Applicable Statutes**

22. Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960" of Title 18, or any property traceable to such property. Title 18, United States Code, Section 982(a)(1) provides for criminal forfeiture of any such property.

23. Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture of "any property, real or personal, which constitutes or is derived from proceeds" traceable to any offense constituting "specified unlawful activity" ("SUA"). Title 18, United States Code, Section 1956(c)(7) defines SUAs wire fraud, in violation of Title 18, United States Code, Section 1343. Title 18, United States Code, Section 982(a)(2)(A), along with Title 28, United States Code, Section 2461(c) provides for the criminal forfeiture of all proceeds traceable to violations of Title 18, United States Code, Sections 1343.

24. Title 18, United States Code, Section 984 provides:

(A)(1) In any forfeiture action in rem in which the subject property is cash, [or] funds deposited in an account in a financial institution...(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property. (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis

-9-

for the forfeiture shall be subject to forfeiture under this section. (B) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis of the forfeiture may be commenced for more than 1 year from the date of the offense.

## Funds in Accounts to be Seized

25.    As described in more detail above, approximately **$1,198,073.40** of unauthorized funds were deposited into account number 5967215491. As of today, this account has a balance of approximately $124,781.20.

26.    As described in more detail above, approximately $250,000 of unauthorized funds were deposited into account number 9814058427. Also between in or about September 2010 and today, this account received $145,000 from account number 5967215491. As of today, this account had a balance of approximately $401,007.09, of which at least **$395,000** is connected to unauthorized transfers from Giants' payroll and transfers from account number 5967215491.

27.    As described above, a third account is a savings account, account number 6477214735. This is a joint account held by Neil E. O'Connor and Robin O'Connor, both of whom have signature authority on the account. As of today, this account had a balance of approximately $41,565.89. In or about August 2010, the balance in this account was $0.01. On or before September 15, 2010, $2,000 was deposited into this account from account number 9814058427. On or about September 15, 2010, **$75,000** was transferred into this account from account number 5967215491. Based on information from the Pro-Business database provided to me by the Giants, on or about September 15, 2010, an

-10-

unauthorized deposit of approximately $286,427.77 was made into account number

5967215491. From on or about September 15, 2010, to on or about July 6, 2011, the only

funds deposited into account number 6477214735 came from account number

5967215491. As set forth above, on July 6, 2011, O'CONNOR wired $608,562.09 from

account number 6477214735 to the Giants' payroll account, leaving the balance of

approximately $41,565.89.

## F. REQUEST FOR SEALING

28.   Because this investigation is continuing, disclosure of the contents of this affidavit will

jeopardize the progress of the investigation. Accordingly, I request that the Court issue

an order pursuant to which this Affidavit and corresponding applications for Warrants be

filed under seal under further order of this Court.

## G. CONCLUSION

29.   Based upon all of the foregoing, I believe, and there is probable cause to believe, that

O'CONNOR has committed violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. §

1030(a)(4) (fraud in connection with a computer), and that evidence, fruits, and

instrumentalities of these offenses will be located in the SUBJECT PREMISES, as

described above.

I declare under penalty of perjury under the laws of the United States the foregoing is true

and correct.

Jason Richards, Special Agent
Federal Bureau of Investigations

-11-

Sworn and subscribed to before me this _____ day of July, 2011.

HON. MARIA-ELENA JAMES
United States Magistrate Judge

-12-

## ATTACHMENT A

## PLACE TO BE SEARCHED

230 Cantada Way, American Canyon, California  is a two story home with a stucco facade and sits on the east side of the street.  The home is painted tan in color.  The second story of the home has blue window shutters.  Above the windows on the second story is a single row of bricks.  There is an attached garage to the left of the front door of the residence.  The street number "230" is displayed near the top left corner of the garage door.  The front door is made of brown wood and is surrounded by a single row of white tiles.  In front of the front door is a cement patio surrounded by a waist high stucco wall and waist high metal gate.  One would need to enter the metal gate to access the front door.  Above the front door is a wooden balcony with a black metal railing.  Currently there is a Remax for sale sign in the front yard.

-1-

**ATTACHMENT B**

### ITEMS TO BE SEIZED FROM
### 230 CANTADA WAY, AMERICAN CANYON, CALIFORNIA

All items and records which constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1030(a)(4) (fraud in connection with a computer), as set forth below, during the time frame January 1, 2010, to the present. As used in this Attachment, the terms "records," "documents," and "materials" include all of the items described in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, paper, digital, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, e-mail, and/or data security devices. The items and records to be seized from 230 Cantada Way, American Canyon, California are:

1.      All records, documents and materials related to ROBIN M. O'CONNOR's employment with the San Francisco Giants.

2.      All records, documents and materials related to payroll records or expense reimbursements to any employee of the San Francisco Giants.

3.      All records, documents and materials regarding money transferred from or paid by the San Francisco Giants.

4.      All records, documents and materials regarding bank and financial records belonging to ROBIN M. O'CONNOR or any member of her family, including Neil O'Connor Sean O'Connor.

5.      All records, documents and materials regarding expenditures by or on behalf of

-1-

ROBIN M. O'CONNOR or any member of her family, including Neil O'Connor or Sean
O'Connor.

      6.     All records, documents and materials regarding automobile purchases or payments
by or on behalf of ROBIN M. O'CONNOR or any member of her family, including Neil
O'Connor or Sean O'Connor.